THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.J., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF BELLINGHAM, *et al.*,<br><br>　　　　　　Defendants. | CASE NO. C16-0620-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' second motion for summary judgment (Dkt. No. 88). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

I.   **BACKGROUND**

The facts of this case have been thoroughly set out in the Court's order on Defendants' first motion for summary judgment. (Dkt. No. 54 at 1–5.) The Court will not repeat them here. In its December 7, 2016 order, the Court dismissed a majority of Plaintiffs' claims. (*Id*. at 13–14.) The only remaining claims in this matter are Plaintiff Alfredo Juarez's ("Plaintiff") claims against the City of Bellingham and Officer Zachary Serad for violation of the Washington Law against Discrimination ("WLAD"), Washington Revised Code chapter 49.60. (*Id*.) The parties have completed discovery, and Defendants renew their motion for summary judgment on these

claims. (Dkt. No. 88.)

## II. DISCUSSION

### A. Summary Judgment

Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Analysis of Plaintiff's WLAD Claim

In order for Plaintiff to make out a prima facie case of racial/national origin discrimination in place of public accommodation under WLAD, he must establish that: (1) he is a member of a protected class, (2) the City's "establishment" (the traffic stop) is a place of public accommodation, (3) Defendants discriminated against him by not treating him in a manner comparable to those outside the protected class, and (4) the protected status was a substantial factor causing the discrimination. *Demelesh v. Ross Stores*, 20 P.3d 447, 456 (Wash. Ct. App. 2001).[1]

---

[1] Plaintiff does not object to Defendants' argument treating his claim under sections 49.60.30 and 49.60.215. Thus, the Court will analyze the claim under this standard.

Washington Courts apply the burden shifting regime used by federal courts to discrimination claims under WLAD. *Id.* A plaintiff must first establish a prima facie case of discrimination, which requires only a minimal showing. *Id.*; *Ramirez v. Olympic Health Management Systems, Inc.*, 610 F. Supp. 2d 1266, 1280 (E.D. Wash. 2009). The burden then shifts to the defense to present a legitimate, nondiscriminatory explanation for the action. *Demelesh*, 20 P.3d at 456. The plaintiff must then respond by showing that this reason is pretextual. *Id.*

Here, the parties do not dispute that Plaintiff has established the first two elements of his prima facie case of discrimination. (Dkt. No. 88 at 15.) In dispute are elements three and four, and whether Plaintiff can show Defendants' proffered legitimate explanation is pretextual.

### 1. Element Three: Unequal Treatment

Plaintiff alleges that Officer Serad discriminated against him by assuming he was a criminal or an undocumented immigrant, rather than a scared teenager, by inquiring into his immigration status, and by involving Border Patrol in the traffic stop. (Dkt. Nos. 1 at 20, 94 at 18.) He asserts that the Bellingham Police Department ("BPD") does not treat "white teenagers in similar circumstances . . . in this manner." (Dkt. No. 94 at 19.)

As evidence for this assertion, Plaintiff offers a statement from a stepmother about her experience when her white stepson was stopped by BPD while drinking and "joyriding,"[2] (*See* Dkt. Nos. 45 at 2; 58 at 2) and Officer Serad's deposition testimony (Dkt. No. 95-2). Officer Serad did not give Plaintiff the opportunity to contact his family, despite the fact that he had Plaintiff's name and home address. (*See generally* Dkt. No. 27.) Officer Serad testified that he

---

[2] The Court has found that other similar declarations presented by Plaintiff were not admissible, and that this declaration was relevant only Plaintiff's claim against the City of Bellingham. (Dkt. No. 58 at 2.)

The Court also notes that Defendants incorrectly assert that the City of Bellingham can only be liable through "imputed knowledge . . . or vicarious liability." (*See* Dkt. No. 96 at 3.) Washington Courts apply direct liability to employers in suits for discrimination in places of public accommodation. *Floeting*, 403 P.3d at 565 (rejecting Plaintiff's liability argument).

had never previously asked a white, black, or Native American driver about their immigration status, or called Border Patrol[3] on a driver. (Dkt. Nos. 95-2 at 9; 88 at 12.) He also stated he would not necessarily inquire about immigration status for every driver in Plaintiff's position, e.g. those stopped for the same infraction, without a license, and with a similar work history. (Dkt. No. 95-2 at 10.)

Plaintiff asserts that Officer Serad "admits that he would not have treated anyone who is not Latino [how he treated Plaintiff]." (Dkt. No. 94 at 19.) This claim clearly overstates Officer Serad's testimony. However, viewed in a light most favorable to Plaintiff, the evidence presented could lead to a reasonable inference that Defendants treated Plaintiff differently from other similarly situated young, non-Hispanic drivers. Where evidence supports both a reasonable inference of discrimination and of non-discrimination, it is the role of the jury to choose between the two. *Mikkelsen v. Public Utility Dist. No. 1 of Kittitas County*, 404 P.3d 464, 475 (Wash. 2017) (internal citation and quotation omitted).

Contrary to Defendants' assertion, Plaintiff is not required to provide evidence that Officer Serad has previously treated a non-Hispanic teenage driver differently in this situation. (*See* Dkt. No. 96 at 3); *Wingate v. City of Seattle*, 198 F. Supp. 3d 1221, 1230 (W.D. Wash. 2016) (genuine issue of material fact existed although plaintiff did not present evidence of defendant police officer's different treatment of non-African American men of his age). Circumstantial, indirect, and inferential evidence can support a showing of discriminatory action. *Mikkelsen*, 404 P.3d at 470. The restrictive approach Defendants promote would run counter to WLAD's mandate of liberal construction and would hamper the statue's preventative purpose.[4] *See Floeting v. Group Health Cooperative,* 400 P.3d 559, 564 (Wash. Ct. App. 2017) (courts

---

[3] Defendants confuse "CBP" (Customs and Border Protection) with "Border Patrol." The Court will assume Defendants mean Border Patrol—the relevant federal agency here—when they refer to "CBP." (*See*, *e.g.*, Dkt. No. 88 at 9.)

[4] Cases Defendants cite to argue stringent standards for use of comparators are inapposite; they involve claims under federal discrimination law and the use of comparators as circumstantial evidence of discriminatory intent. (*See* Dkt. No. 96 at 3.)

must "view with caution any construction that would narrow [WLAD] coverage") (internal citation and quotation omitted). Furthermore, the Court does not find Defendants' reliance on Officer Serad's treatment of Plaintiff's passengers a particularly useful comparison. (*See* Dkt. No. 88 at 18.) The relevant inquiry is how Plaintiff was treated as compared to similarly situated drivers, who would have the same legal rights and responsibilities as he did during a traffic stop.

### 2. Element Four: Substantial Motivating Factor

Defendants argue that Plaintiff has presented no evidence showing that race or national origin was a substantial factor motivating Officer Serad's actions. (Dkt. No. 88 at 16.) The Court has already rejected this argument in its prior summary judgment order and order on Defendants' motion for reconsideration, finding Plaintiff's proffered evidence sufficient to raise a genuine issue of fact. (Dkt. Nos. 54 at 11–12, 58 at 2.)

### 3. Nondiscriminatory Explanation and Evidence of Pretext

Defendants provide a legitimate, nondiscriminatory explanation for Officer Serad's actions: he was attempting to identify a driver in a traffic stop. (Dkt. No. 88 at 18.) Thus, the burden shifts to Plaintiff to produce evidence showing this reason is a pretext. *Demelesh*, 20 P.3d at 456. Plaintiff may satisfy the "pretext prong" by showing either that the proffered reason is pretextual or that despite a legitimate explanation, race was still a substantial factor motivating the action. *Scrivener v. Clark College*, 334 P.3d 541, 546 (Wash. 2014).

Defendants argue that if Officer Serad was motivated by "racial animus, he would have asked [Border Patrol] to . . . investigate the legal status of all four passengers." (Dkt. Nos. 88 at 18, 96 at 4.) While this conduct may tend to suggest Officer Serad's nondiscriminatory explanation is legitimate, it is not conclusive on the issue of motive. Racial discrimination is not always as overt and direct as Defendants suggest; it "may arise just as surely through 'subtleties of conduct.'" *See Evergreen Sch. Dist. V. Wash. State Human Rights Com'n*, 695 P.2d 999, 1006 (Wash. Ct. App. 1985).

The Court has already found conduct tending to suggest that Officer Serad's actions were

racially motivated. (*See* Dkt. Nos. 54 at 11–12, 58 at 2.) Additional evidence now before the Court reinforces that an issue of material fact exists regarding whether Officer Serad's proffered explanation was pretextual. In his deposition, Officer Serad stated that he had never asked a non-Hispanic driver about immigration status. (Dkt. No. 95-2 at 9.) He reported that he asked Plaintiff about his immigration status because Plaintiff mentioned living in Washington State and working in California (*Id.*) A reasonable juror could find this justification implicitly based on assumptions about Plaintiff's work and legal status, made because of Plaintiff's Hispanic appearance. When Officer Serad questioned Plaintiff about his immigration status, he asked: "When did you become a U.S. resident or are you one? It's kind of an important question for you." (Dkt. No. 27 at 21–22.) He went on to ask about how Plaintiff entered the country. (*Id.*) Plaintiff also stated that when Border Patrol arrived, Officer Serad told them Plaintiff was undocumented and then gave them the choice of taking him into custody. (Dkt. No. 95-1 at 13, 14.) Finally, Officer Serad never followed up with Border Patrol to confirm Plaintiff's identity or to issue a citation. (Dkt. No. 95-2 at 13.) Viewed in a light most favorable to Plaintiff, this conduct leads to a reasonable inference that Officer Serad's questions and conduct were motivated not merely by a desire to identify Plaintiff, but by Plaintiff's race and national origin. As the Court stated above, it is the jury's role to decide between competing reasonable inferences of discrimination and nondiscrimination. *Mikkelsen*, 404 P.3d at 475.

### C.    Officer Serad's Compliance with the Law

Defendants argue in the alternative that Plaintiff's claims are precluded by section 49.60.215's exception for "conditions and limitations established by law and applicable to all persons." (Dkt. No. 88 at 20); Wash. Rev. Code § 49.60.215. This argument is unpersuasive.

Defendants appear to argue that Officer Serad's actions could not have constituted discrimination because Plaintiff failed to comply with traffic laws, and Officer Serad's actions were consistent with state law and judicial precedent. (Dkt. No. 88 at 20–21.) First, Defendants assert Officer Serad "acted pursuant to all relevant statutes in Title 46 RCW." (*Id.*) But the cited

provisions place conditions and limitations on motorists, not on law enforcement officers. (*See id*.) The fact that Plaintiff violated traffic laws is irrelevant to his protection from discrimination. Next, Defendants argue Officer Serad detained Plaintiff for a reasonable amount of time. (*Id*.) The length of the traffic stop is not determinative as to whether racial discrimination occurred during that time. Defendants further argue that Officer Serad's inquiry about Plaintiff's immigration status was "permissible under RCW 46.20.035(1)." The cited provision lists the forms of identification that the State may rely on to issue a driver's license (including immigration and naturalization forms). *See* Wash. Rev. Code § 46.20.035(1). The statute has nothing to do with the conduct of police officers during a traffic stop. Defendants point to no provisions of Washington law applicable to all drivers regarding questioning individuals about their legal status or turning a driver over to Border Patrol during a traffic stop.

The remainder of Defendants' argument is that Officer Serad acted reasonably in trying to identify Plaintiff. (Dkt. No. 88 at 21–22.) This argument merely echoes Officer Serad's proffered nondiscriminatory explanation for his actions, which the Court has found is subject to a dispute of fact. Defendants' citation to laws regarding the licensing of drivers and case law stating that federal and state agencies should work together do not establish a "condition or limitation" that would resolve the remaining issues of fact for trial.

### D. Plaintiff's Request to Strike Expert Opinion

Plaintiff moves to strike the declaration and report of Defendants' expert witness, Kyle Sumpter, on the basis that Supmter was not properly disclosed, does not provide relevant and helpful testimony, and is not qualified to render expert testimony. (Dkt. No. 94 at 23.) The Court finds that Sumpter was properly disclosed under case deadlines established by the Court and the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(2)(B), (D). His declaration contains "facts that would be admissible in evidence" and "shows that he is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Supmter's extensive experience in law enforcement qualifies him to testify regarding police policies and practices. (*See* Dkt. No. 90 at 3–4) (reciting

Sumpter's qualifications). Plaintiff's assert issues with the witness's qualifications go to his credibility, which may be attacked at trial. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). Therefore, Plaintiff's request to strike is DENIED. This finding does not preclude objections at trial to opinions given outside the scope of the witness's expertise. *See U.S. v. Lundy*, 809 F.2d 392, 394–95 (7th Cir. 1987).

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 99) is DENIED.

DATED this 12th day of July 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE